**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ALFREDO RODRIGUEZ, | : | |
| | : | Civil Action No. 09-4505 (FLW) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MERCER COUNTY, | : | |
| | : | |
| Defendant. | : | |

**APPEARANCES**:

Plaintiff <u>pro se</u>
Alfredo Rodriguez
Mercer County Correction Center
P.O. Box 8068
Trenton, NJ  08650

**WOLFSON**, District Judge

　　Plaintiff Alfredo Rodriguez, a prisoner confined at Mercer County Correctional Center in Trenton, New Jersey, seeks to bring this action <u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

　　At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I. BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff's allegations arise out of a fall he suffered in the Mercer County Correctional Center ("MCCC") shower room on July 4, 2009. Plaintiff alleges that the shower facilities at MCCC consist of two rooms, one room in which prisoners disrobe and place their belongings on benches, and another room where they shower. Plaintiff alleges that prisoners are required to walk into the shower room wearing only flip-flop slippers. Plaintiff alleges that pools of water collect on this floor rendering it very slippery.

Plaintiff alleges that on July 4, 2009, he fell on one of these puddles, suffering injuries sufficient to require a trip to the hospital.

Plaintiff alleges that, for years prior to July 4, 2004:

> MCCC Warden, Correction Officers, Advisors, Investigators, Supervisors, undisclosed number of associates, and the Maintenance Department (collectively, "Mercer County"') was through assessment of data, statistics, lawsuits, citizen complaints, inmates grievances, actual incidents, tips, rumors, and personal knowledge, put on notice about the dangerous condition.  Mercer County was intimately aware that its failure to police the premises to discover defects; its failure to make sweeps of and clean up the flood; the slippery flip-flop slippers it issued to inmates; and

>     permitting inmates to enter or remain on the premises
>     without making the condition reasonably safe not only led to
>     the injuries like those I suffered, but made those injuries
>     reasonably foreseeable.  Mercer county's failure [] to use
>     means at its disposal to protect inmates from that dangerous
>     condition, was the driving or moving force behind my
>     injuries.

(Complaint, ¶ 6.)

Plaintiff alleges that Mercer County's "policy and/or custom" violated his substantive due process rights under the "state-created danger" theory.  (Complaint, Count I.)  The only named defendant is Mercer County.

Plaintiff seeks compensatory and punitive damages and injunctive relief.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must

3

"accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).

The Supreme Court has demonstrated the application of these general standards to a Sherman Act conspiracy claim.

4

> In applying these general standards to a § 1 [conspiracy] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." ... It makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.
>
> The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief." A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory. ...

Twombly, 127 S.Ct. at 1965-66 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the Twombly pleading standard applies outside the § 1 antitrust context in which it was decided. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read

Twombly so narrowly as to limit its holding on plausibility to the antitrust context").

> Context matters in notice pleading.  Fair notice under Rule 8(a)(2) depends on the type of case -- some complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Indeed, taking Twombly and the Court's contemporaneous opinion in Erickson v. Pardus, 127 S.Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8.  Put another way, in light of Twombly, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief.  We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  Id. at 1950.  Thus, "a court considering a motion to dismiss can choose to begin by

identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id.

> Therefore, after Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'"  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

III.  SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.  ANALYSIS

Plaintiff alleges that Mercer County is liable for his fall based on the "state-created danger" theory.

The "state-created danger" theory of substantive due process liability arose in response to the Supreme Court's decision in DeShaney v. Winnebago Cty. Soc. Servs. Dept., 489 U.S. 189 (1989).  In DeShaney, the Supreme Court held that social workers could not be held liable, under a substantive due process

8

theory, for injuries inflicted on a child by his father, who had custody of him, even though the social workers had previously believed the child's father was abusing him and had previously secured temporary custody of the child.  The petitioners in DeShaney, the child and his mother, contended that a "special relationship" existed between the child and the state, "because the State knew that Joshua faced a special danger of abuse at his father's hands, and specifically proclaimed, by word and by deed, its intention to protect him against that danger."  DeShaney, 489 U.S. at 197.  The Supreme Court, however, rejected the argument that the Due Process Clause confers an affirmative duty to protect citizens from one another, even where the government is aware of the danger.

> We reject this argument.  It is true that in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals.  In Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) we recognized that the Eighth Amendment's prohibition against cruel and unusual punishment, made applicable to the States through the Fourteenth Amendment's Due Process Clause, requires the State to provide adequate medical care to incarcerated prisoners.  We reasoned that because the prisoner is unable "'by reason of the deprivation of his liberty [to] care for himself,'" it is only "'just'" that the State be required to care for him.
>
> In Youngberg v. Romeo, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), we extended this analysis beyond the Eighth Amendment setting, holding that the substantive component of the Fourteenth Amendment's Due Process Clause requires the State to provide involuntarily committed mental patients with such services as are necessary to ensure their "reasonable

safety" from themselves and others.  As we explained: "If it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional [under the Due Process Clause] to confine the involuntarily committed – who may not be punished at all – in unsafe conditions."  ...

But these cases afford petitioners no help.  Taken together, they stand only for the proposition that when the State takes a person into its custody and holds him there, against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.  ... [FN7]  The rationale for this principle is simple enough:  when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs – e.g., food, clothing, shelter, medical care, and reasonable safety – it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.  ...  The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.  ...  In the substantive due process analysis, it is the State's affirmative act of restraining the individual's the individual's freedom to act on his own behalf – through incarceration, institutionalization, or other similar restraint of personal liberty – which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

> [FN7]  Even in this situation, we have recognized that the State "has considerable discretion in determining the nature and scope of its responsibilities."  ...

The Estelle-Youngberg analysis simply has no applicability in the present case.  Petitioners concede that the harms Joshua suffered occurred not while he was in the State's custody, but while he was in the custody of his natural father, who was in no sense a state actor.  ...  Under these circumstances, the State had no constitutional duty to protect Joshua.

10

DeShaney, 489 U.S. at 198-201 (citations and footnotes omitted).

In response to DeShaney, lower federal courts have expounded upon the circumstances in which a state owes a duty to protect its citizens. The first exception to the DeShaney rule of no duty to protect occurs where there is a "special relationship" between the state and its citizen, and derives from the discussion in DeShaney of circumstances in which the state has taken a citizen into its custody. See, e.g., Sanford v. Stiles, 456 F.3d 298, 303-04 and n.4 (3d Cir. 2006) ("This Court has generally stated that this ["special relationship"] exception, derived from DeShaney, requires a custodial relationship."). See also Nicini v. Morra, 212 F.3d 798, 808 (3d Cir. 2002) ("when the state places a child in state-regulated foster care, the state has entered into a special relationship with that child which imposes upon it certain affirmative duties" under the Due Process Clause) (citing DeShaney).

In response to DeShaney, the lower federal courts also have considered the circumstances under which state action confers a duty to protect a citizen who is not in state custody. The U. S. Court of Appeals for the Third Circuit has set out the elements of such a "state-created danger" claim.

> DeShaney stands for the proposition that the Due Process Clause imposes no affirmative duty to protect a person who is not in state custody. As the last quoted paragraph suggests, however, this does not mean that no constitutional violation can occur when state authority is affirmatively employed in a manner that injures a

11

> citizen or renders him "more vulnerable to injury from another source than he or she would have been in the absence of state intervention. ... This complement to the DeShaney holding has come to be known in its progeny as the "state-created danger doctrine."
>
> Our case law establishes the following essential elements of a meritorious "state-created danger" claim:
>
> > (1) "the harm ultimately caused was foreseeable and fairly direct;"
> >
> > (2) a state actor acted with a degree of culpability that shocks the conscience;
> >
> > (3) a relationship between the state and the plaintiff existed such that "the plaintiff was a foreseeable victim of the defendant's acts." or a "member of a discrete class of persons subjected to the potential harm brought about by the state's actions," as opposed to a member of the public in general; and
> >
> > (4) a state actor affirmatively used his or her authority in a way that created a danger tot he citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.
>
> It is important to stress ... that under the fourth element of a state-created danger claim, "liability under the state-created danger theory is predicated upon the states' _affirmative acts_ which work to the plaintiffs' detriments in terms of exposure to danger." ... It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause.

Bright v. Westmoreland County, 443 F.3d 276, 281-82 (3d Cir. 2006) (citations and footnotes omitted).

Here, Plaintiff is complaining of allegedly dangerous conditions in the place of his confinement. The "state-created danger" theory is not applicable to such a setting. Instead, any

12

liability arises out of the "special relationship" between the state and Plaintiff as a result of taking him into custody. To the extent Plaintiff was a convicted and sentenced prisoner at the time of the acts complained of, he is protected by the Eighth Amendment proscription against cruel and unusual punishment; pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment.[1]  See Bell v. Wolfish, 441 U.S. 520, 535, n.16, 545 (1979); City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983); Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005); Natale v. Camden County Correctional Facility, 318 F.3d 575, 581 (3d Cir. 2003); Fuentes v. Wagner, 206 F.3d 335, 341 n.9 (3d Cir. 2000); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 n.31 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).  With respect to medical care and prison conditions, however, pretrial detainees retain at least those constitutional rights enjoyed by convicted prisoners.  Bell v. Wolfish, 441 U.S. at 545; Hubbard, 399 F.3d at 165-66; Natale, 318 F.3d at 581-82; Kost v. Kozakiewicz, 1 F.3d 176, 187-88 (3d Cir. 1993).

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and

---

[1] Plaintiff does not state, in the Complaint, whether he was a pre-trial detainee or a convicted and sentenced prisoner at the time of his fall.

unusual punishments" on those convicted of crimes.  Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).  This proscription against cruel and unusual punishments is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency."  Helling v. McKinney, 509 U.S. 25, 32 (1993).  It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Id. at 31.

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation." Helling v. McKinney, 509 U.S. at 32 (quoting Rhodes, 452 U.S. at 346).  This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim.  Hudson v. McMillian, 503 U.S. 1, 9 (1992).

The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm.  See Farmer v. Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303.

14

A plaintiff may satisfy the objective component of a conditions-of-confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. Rhodes, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons." Rhodes, 452 U.S. at 349. To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society. Id. at 347. An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." Ingalls v. Florio, 968 F.Supp. 193, 198 (D.N.J. 1997).

Pre-trial detainees and convicted but unsentenced prisoners retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment.[2]  See Hubbard v. Taylor, 399

---

[2] A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or State law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

F.3d 150 (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 (3d Cir. 2000). Analysis of whether such a detainee or unsentenced prisoner has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979). Hubbard, 399 F.3d at 157-60, 164-67; Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...
>
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not

> constitutionally be inflicted upon detainees <u>qua</u> detainees. ...

441 U.S. at 535-39 (citations omitted). The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." 441 U.S. at 540.

Whether analyzed under the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment, Plaintiff's allegations regarding slippery floors in the shower room amount to nothing more than allegations of negligence, or possibly gross negligence, which fail to state a claim for a constitutional deprivation.

> Slippery floors present neither a substantial risk of serious harm nor a qualitatively intolerable risk. While the rainwater may have been a "potentially hazardous condition, slippery floors constitute a daily risk faced by members of the public at large. Federal courts from other circuits have therefore consistently held that slippery prison floors do not violate the Eighth Amendment." <u>Reynolds v. Powell</u>, 370 F.3d 1028, 1031-32 (10th Cir. 2004) (holding standing water in shower did not pose substantial risk of serious harm, even though plaintiff was on crutches); <u>see also</u> <u>Bell v. Ward</u>, 88 F. App'x 125, 127 (7th Cir. 2004) (holding that wet floor in common area of cell block, resulting in four-stitch injury to inmate, did not pose substantial risk of serious harm, noting that he and

> others had previously crossed wet floor without slipping); LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993) (holding that shackling inmate during showers was not sufficiently unsafe, noting "slippery prison floors ... do not state even an arguable claim for cruel and unusual punishment"); Santiago v. Guarini, 2004 WL 2137822 at *2 (E.D.Pa. Sept.20, 2004) (holding toilet and sink leak in cell, causing slip and fall, did not present substantial risk to inmate's safety and were not objectively serious conditions).
>
> The rainwater on Forde's cell floor also fails to constitute a denial of life's necessities to meet the first prong of a conditions of confinement claim. Forde does not suggest that the water in his cell rose to any significant level other than that which caused him to slip. "[P]uddles are unpleasant but not unconstitutional." Smith v. Melvin, 1996 WL 467658 at *2 (7th Cir. 1996) (affirming lower court's dismissal of complaint, holding leaky toilet and standing water on cell floor was not extreme deprivation); see also Eley v. Kearney, 2005 WL 1026718 at *5 (D.Del. Apr. 25, 2005) (holding that accumulation of rainwater at top of stairs was not a sufficiently serious deprivation); Jackson v. Taylor, 2008 WL 4471439 at *5 (D.Del. Sept. 26, 2008) (holding excessive humidity in kitchen, causing inmates to routinely slip and fall, was not a sufficiently serious deprivation); ... .
>
> "Simply put, '[a] 'slip and fall,' without more, does not amount to cruel and unusual punishment.... Remedy for this type of injury, if any, must be sought in state court under traditional tort law principles.'" Reynolds, 370 F.3d at 1031 (citation omitted).

Forde v. Fischer, 2009 WL 5174650, *3-4 (D.N.J. Dec. 16, 2009) (Eighth Amendment). See also Daniels v. Williams, 474 U.S. 327 (1986) (claim arising out of a fall from pillow left on prison stairs is a claim of negligence, not actionable under the Due Process Clause of the Fourteenth Amendment). See also DeShaney, 489 U.S. at 202 ("the Due Process Clause of the Fourteenth Amendment, ... as we have said many times, does not transform

every tort committed by a state actor into a constitutional violation" (citations omitted)).  The allegation that the slippery conditions may have existed for some time does nothing to move this claim from a state-law tort claim to a constitutional deprivation.

Accordingly, this claim will be dismissed with prejudice.

### V.   CONCLUSION

For the reasons set forth above, the Complaint will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim.  It does not appear that Plaintiff could amend the Complaint to cure its deficiencies.  Accordingly, this Court will not grant him leave to file an amended complaint.

An appropriate order follows.

s/Freda L. Wolfson  
Freda L. Wolfson  
United States District Judge

Dated: March 9, 2010